AARON M. KINIKINI (Bar No. 10225)
NICHOLAS H.K. JACKSON (Bar No. 15079)
KATHERINE BUSHMAN (Bar No. 15561)
Disability Law Center
205 North 400 West
Salt Lake City, Utah  84103
Phone:  (801) 363-1347
Email: njackson@disabilitylawcenter.org
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION**

| | |
|---|---|
| MARY ANN ERICKSEN,<br><br>        Plaintiff,<br><br>v.<br><br>REDZONE REAL ESTATE d/b/a UTAH UTE REAL ESTATE, LLC, BONNIEWOOD WVC, LLC, JESSE R. BOONE, and BETH LNU,<br><br>        Defendants. | **COMPLAINT**<br>(Jury Demand)<br><br>Case No. 2:19-cv-00988-CMR |

Plaintiff MARY ANN ERICKSEN hereby alleges and complains against Defendants Redzone Real Estate, Utah Ute Real Estate LLC, Bonniewood WVC LLC, Jesse R. Boone, and Beth LNU, as follows:

**Nature of the Action, Parties, Jurisdiction, and Venue**

1. This is a civil rights action to redress and prevent the violation of Plaintiff's rights under the state and federal Fair Housing Acts. Plaintiff seeks injunctive relief, damages, and costs and attorney's fees.

2. This Court has original jurisdiction to hear and decide Ms. Ericksen's federal claims

in the First, Second, and Third Causes of Action under 28 U.S.C.A. § 1331 and 42 U.S.C.A. § 3613(a), as these claims arise under the laws of the United States.

3. This Court has supplemental jurisdiction to hear and decide Ms. Ericksen's state law claims in the Fourth and Fifth Causes of Action under 28 U.S.C.A. § 1367(a), as these claims arise from the same set of operative facts giving rise to the First, Second, and Third Causes of Action.

4. Venue is proper in the District of Utah under 28 U.S.C.A. § 1391(b)(2) because it is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

5. Plaintiff Mary Ann Ericksen is an individual residing in a rental property (the "subject property") in West Valley City, Utah. Ms. Ericksen is a person with a disability as defined by 42 U.S.C.A. 3602(h).[1]

6. Bonniewood WVC, LLC is a Utah limited liability company, and the owner of the subject property.

7. Redzone Real Estate ("Redzone") is a Utah company, and one of two companies that operates and manages the subject property.

8. Utah Ute Real Estate ("Utah Ute") is a Utah limited liability company, and one of two companies that operates and manages the subject property.

9. Jesse Boone is the manager of Redzone and Utah Ute, and was personally involved

---

[1] The cited statute refers to the definition of "handicap." In light of changing social norms, we use the term "disability" instead.

in the discriminatory conduct. Upon information and belief, Mr. Boone lives and works in Salt Lake County, Utah.

10. Beth LNU is employed by Defendants as a leasing agent, and was personally involved in the discriminatory conduct. Beth LNU's last name is not known to Ms. Ericksen at this time. Upon information and belief, Beth LNU lives and works in Salt Lake County, Utah.

## Facts

11. Ms. Ericksen first contacted Defendants to inquire about renting the subject property for herself and her son in early April, 2019.

*Denial of Assistance Animal as Reasonable Accommodation*

12. Ms. Ericksen notified Defendants no later than April 23, 2019, that she and her son have disabilities and utilize a shared emotional support animal ("assistance animal") to help alleviate the symptoms of their disabilities. As part of the application process, Ms. Ericksen requested permission to reside with their assistance animal.

13. Ms. Ericksen spoke to several agents of Defendants from April to June wherein she stated that she and her son have an assistance animal and were requesting permission to reside with that assistance animal as a reasonable accommodation under the Fair Housing Act.

14. Defendants understood that Ms. Ericksen was requesting a reasonable accommodation because they provided her with reasonable accommodation paperwork as part of her lease agreement paperwork.

15. Ms. Ericksen signed Defendants' reasonable accommodation paperwork electronically on June 4, 2019, at the same time she signed the lease agreement. Ms. Ericksen provided her doctor's name and contact information, and gave her permission for Defendants to contact her doctor to verify that she meets the legal requirements for a reasonable accommodation.

16. Ms. Ericksen also filled out and signed the "Animal (Pet) Agreement," despite the fact that her animal is not a "pet."

17. Despite the fact that Ms. Ericksen and her son provided the requested paperwork, Defendants denied Ms. Ericksen's request for reasonable accommodation.

18. In June 2019, Defendants orally informed Ms. Ericksen on several occasions that her request for accommodation was denied. As a result, Defendants told Ms. Ericksen that she was not allowed to bring her assistance animal outside into the yard for any reason, even to go to the bathroom.

19. Defendants also told Ms. Ericksen that she would be evicted if she did not sign a lease addendum titled "Animal Agreement." The "Animal Agreement" states on the first page that it "is not for assistance animals," and purports to apply several obligations on Ms. Ericksen that are unlawful as applied to assistance animals.s

20. Ms. Ericksen did not sign the agreement out of concern that is was not a lawful assistance animal agreement, and that it would subject her to possible future harm. Defendants repeatedly informed her that she was in violation of the lease for not signing the addendum, threatened eviction, and informed her that she was not allowed to bring her animal outside the

premises into the yard.

*Interference with use of housing voucher*

21. Prior to signing her lease agreement, Ms. Ericksen informed Defendants that she was a participant in the "Housing Choice Voucher Program," a rental assistance program funded by the United States Department of Housing and Urban Development ("HUD") and administered by local housing authorities.

22. Housing Connect (formerly the Housing Authority of Salt Lake County) administers Ms. Ericksen's voucher.

23. As part of the voucher program, housing providers like Defendants are guaranteed rental payments from the Housing Authority in exchange for completing paperwork and undertaking any repairs deemed necessary by the Housing Authority. Generally, Housing Connect makes the rental payments via direct deposit into the housing provider's bank account.

24. Defendants purposely delayed the completion of paperwork and other required items in an effort to interfere with Ms. Ericksen's use of the voucher.

25. Defendants eventually completed the required paperwork and other items required by Housing Connect, and Ms. Ericksen arranged to move into the property on June 8.

26. On June 6, 2019, before she moved into the property, Defendants served Ms. Ericksen with a three-day notice to pay or vacate. Defendants served Ms. Ericksen with this notice even though they were aware that Housing Connect would be paying the outstanding portion of the balance due once Ms. Ericksen moved into the unit.

27. Ms. Ericksen was assessed almost one-thousand dollars in fees based on this Three Day Notice.

28. Housing Connect paid the outstanding portion of the original amount of rent due. Under threat of eviction, Ms. Ericksen paid the remainder of the amount claimed to be due in the Three Day notice.

29. Ms. Ericksen moved into the subject property on June 8, 2019.

30. During the month of June, Ms. Ericksen was told several times by Defendants' agents that she was not allowed to use the backyard, mailbox, driveway, garbage cans, or climate control system in the unit.

31. On July 8, 2019, Defendants served Ms. Ericksen with another Three Day Notice to Pay or Vacate, assessing about four-hundred dollars in fees on top of the original amount of rent due.

32. At the time Defendants served the July 8 Three Day Notice, Ms. Ericksen was current on rent. Despite the fact that she did not owe any money to trigger the Three Day notice, Ms. Ericksen paid the extra fees that were assessed under threat of eviction.

33. Sometime during the month of July, Defendants instructed Housing Connect to pay its portion of Ms. Ericksen's rent via check, rather than via direct deposit on the first of each month. Defendants so instructed Housing Connect in order to make it more likely that Ms. Ericksen's full rent would not be received by the date due, which would then allow Defendants to charge additional fees to Ms. Ericksen.

34. On July 22, 2019, counsel for Ms. Ericksen sent a letter to Defendants, asking that

Ms. Ericksen's request for accommodation for her assistance animal be granted, and asking to resolve the payment and Three Day Notice issues. The letter requested a response by July 30, 2019. Defendants did not respond to the letter until August 28, 2019.

35. On August 6, 2019, Defendants served Ms. Ericksen with another Three Day Notice to Pay or Vacate. The Notice stated falsely that Ms. Ericksen was behind on her portion of the rent as of the date due, and assessed $175 in additional fines against Ms. Ericksen. Under threat of eviction, Ms. Ericksen paid the additional fees assessed.

36. At some point in August or September 2019, Defendants "removed" several charges against Ms. Ericksen's account from the ledger. However, Defendants did not actually refund any of the money paid by Ms. Ericksen or Housing Connect. Rather, it altered the ledger to show no payments were received and kept the money.

37. During the month of September and October 2019, counsel for Ms. Ericksen was engaged with counsel for Defendants, asking for reasonable accommodations and attempting to resolve the payment issues.

38. As of October 29, 2019, Ms. Ericksen's account showed a negative balance of $1332.00. In early November, 2019, Defendants again doctored the ledger to remove an $800 credit, in an effort to manufacture another false Three Day Notice along with the resulting $175 in extra fees.

39. According to one ledger provided by Defendants, Ms. Ericksen carried a negative account balance as of November 4, 2019. An altered ledger, also provided by Defendants, showed that Ms. Ericksen owed Defendants $449 as of November 4, 2019.

40. On November 19, 2019, counsel for Defendants refused to provide any additional information about the conflicting ledgers, or explain Defendants' position regarding Ms. Ericksen's account.

*Other disparate treatment*

41. On October 29, 2019, Defendants called Ms. Ericksen to find out if she was in her unit. Defendants spoke to Ms. Ericksen and she made a maintenance appointment for 9:00pm later that day.

42. At around 7:30pm, Defendants called the West Valley City Police Department, and informed the police that Defendants were afraid that a senior citizen had died of exposure in her home, and requested emergency assistance.

43. The police, acting solely on the basis of the information provided by Defendants, kicked down Ms. Ericksen's door and subjected her to a traumatizing experience. Defendants knew at the time they called the police that Ms. Ericksen was not in any physical danger.

44. Over the course of her tenancy, Ms. Ericksen has requested several maintenance items from Defendants, including that Defendants fix the electrical system, her broken front door, and the light outside her outdoor stairwell.

45. Defendants have not completed any of the requested repairs, but have completed similar repairs for tenants without disabilities that do not use housing vouchers.

46. On or about November 1, 2019, Ms. Ericksen slipped in the stairwell leading to her front door because it was too dark to see the steps. Ms. Ericksen suffered physical injuries as a

result of this fall.

### FIRST CLAIM FOR RELIEF

**(Violation of the federal Fair Housing Act – denial of reasonable accommodation)**

47. Ms. Ericksen hereby incorporates by reference the allegations in the preceding paragraphs as though fully set forth in this claim for relief.

48. By the above conduct, Defendants refused to make a reasonable accommodation to their rules, policies, practices, or services in violation of 42 U.S.C.A. § 3604(f)(3)(B) and 24 C.F.R. § 100.204.

49. As a result of Defendants' conduct, Ms. Ericksen has suffered injuries and is an aggrieved person as defined by 42 U.S.C.A. § 3602(i).

50. Defendants' actions were intentional, willful, and taken in disregard of Ms. Ericksen's rights.

### SECOND CLAIM FOR RELIEF

**(Violation of the federal Fair Housing Act – discrimination on the basis of disability)**

51. Ms. Ericksen hereby incorporates by reference the allegations in the preceding paragraphs as though fully set forth in this claim for relief.

52. By the above conduct, Defendants discriminated against Ms. Ericksen in the terms, conditions, or privileges of rental, in violation of 42 U.S.C.A. § 3604(f)(2) and 24 C.F.R. § 100.65.

53. As a result of Defendants' conduct, Ms. Ericksen has suffered injuries and is an

aggrieved person as defined by 42 U.S.C.A. § 3602(i).

54.     Defendants' actions were intentional, willful, and taken in disregard of Ms. Ericksen's rights.

### THIRD CLAIM FOR RELIEF

**(Violation of the federal Fair Housing Act – retaliation)**

55.     Ms. Ericksen hereby incorporates by reference the allegations in the preceding paragraphs as though fully set forth in this claim for relief.

56.     By the above conduct, Defendants retaliated against Ms. Ericksen in violation of 42 U.S.C.A. § 3617 and 24 C.F.R. § 100.400.

57.     As a result of Defendants' conduct, Ms. Ericksen has suffered injuries and is an aggrieved person as defined by 42 U.S.C.A. § 3602(i).

58.     Defendants' actions were intentional, willful, and taken in disregard of Ms. Ericksen's rights.

### FOURTH CLAIM FOR RELIEF

**(Violation of the Utah Fair Housing Act – source of income discrimination)**

59.     Ms. Ericksen hereby incorporates by reference the allegations in the preceding paragraphs as though fully set forth in this claim for relief.

60.     By the above conduct, Defendants discriminated against Ms. Ericksen in the terms, conditions, or privileges of rental, on the basis of her source of income, in violation of Utah Code Ann. § 57-21-5(1)(b)(i).

61. As a result of Defendants' conduct, Ms. Ericksen has suffered injuries and is an aggrieved person as defined by Utah Code Ann. § 57-21-2(2).

62. Defendants' actions were intentional, willful, and taken in disregard of Ms. Ericksen's rights.

## FIFTH CLAIM FOR RELIEF

### (Violation of the Utah Fair Housing Act – reprisal)

63. Ms. Ericksen hereby incorporates by reference the allegations in the preceding paragraphs as though fully set forth in this claim for relief.

64. By the above conduct, Defendants interfered with and engaged in a reprisal against Ms. Ericksen in violation of Utah Code Ann. § 57-21-7(1).

65. As a result of Defendants' conduct, Ms. Ericksen has suffered injuries and is an aggrieved person as defined by Utah Code Ann. § 57-21-2(2).

66. Defendants' actions were intentional, willful, and taken in disregard of Ms. Ericksen's rights.

### Prayer for Relief

67. Wherefore, Ms. Ericksen prays for the following relief on all her claims:

   a. Actual and punitive damages in an amount to be proven at trial;

   b. Prejudgment and post-judgment interest;

   c. Costs;

   d. Attorneys' fees; and

   e. For any other relief to which Ms. Ericksen may prove to be entitled.

COMPLAINT
Page 11 of 12

## **Jury Demand**

Ms. Ericksen hereby demands a trial by jury in accordance with Rule 38 of the Federal Rules of Civil Procedure.

DATED this **18th** day of **December, 2019.**

                By /s/ Nicholas H.K. Jackson
                NICHOLAS H.K. JACKSON
                *Attorney for Plaintiff*